William D. Hyslop
United States Attorney
Brian M. Donovan
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                                  Plaintiff,

         vs.

ELSA LETICIA TORRES;
NORTHWEST FARM CREDIT
SERVICES, PCA,

                                  Defendant.

No. 1:17-cv-03217-RMP

FIRST AMENDED COMPLAINT
FOR FORECLOSURE

        The United States of America, on behalf of the Farm Service Agency, United

States Department of Agriculture ("FSA"), alleges as follows:

        1.      This action is brought to collect an indebtedness owed to the United

States of America. Jurisdiction exists pursuant to 28 U.S.C. § 1345.

        2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2)

because this is the judicial district in which the Defendants reside and the property

that is the subject of this action in situated in this judicial district.

FIRST AMENDED COMPLAINT - 1

3.     On or about January 31, 2014, Defendant Elsa Leticia Torres (Defendant Torres) executed and delivered to FSA a promissory note in the amount of $300,000.00. A copy of this note is attached as Exhibit A.

4.     On or about January 31, 2014, for the purpose of securing payment of the promissory note described in paragraph 3, Defendant Torres executed and delivered to FSA a real estate mortgage describing certain real property she owns in Yakima County, Washington. A copy of this mortgage is attached as Exhibit B. This mortgage was recorded February 4, 2014, as Auditor's File No. 7830535, Official Records of Yakima County, Washington. This mortgage still exists of record as a lien upon the real property described therein.

5.     On or about January 31, 2014, Defendant Torres executed and delivered to FSA a promissory note in the amount of $112,500.00. A copy of this note is attached as Exhibit C. This note was rescheduled by the execution of a promissory note by Defendant Torres on March 11, 2015, in the amount of $31,495.52. A copy of the note rescheduling the debt is attached as Exhibit D.

6.     On or about January 31, 2014, Defendant Torres executed and delivered to FSA a promissory note in the amount of $20,000.00. A copy of this note is attached as Exhibit E. This note was rescheduled by the execution of a promissory note by Defendant Torres on March 11, 2015, in the amount of $20,415.07. A copy the note rescheduling the debt is attached as Exhibit F.

FIRST AMENDED COMPLAINT - 2

7.    On or about January 31, 2014, for the purpose of securing payment of the promissory notes described in paragraphs 3 and 5, Defendant Torres executed and delivered to FSA a real estate mortgage describing certain real property she owns in Yakima County, Washington.  A copy of this mortgage is attached as Exhibit G.  This mortgage was recorded February 4, 2014, as Auditor's File No. 7830536, Official Records of Yakima County, Washington.  This mortgage still exists of record as a lien upon the real property described therein.

8.    On or about March 11, 2015, Defendant Torres executed and delivered to FSA a promissory note in the amount of $126,000.00.  A copy of this note is attached as Exhibit H.

9.    On or about March 11, 2015, for the purpose of securing payment of the promissory notes described in paragraphs 3, 5, 6, and 8, Defendant Torres executed and delivered to FSA a real estate mortgage describing certain real property she owns in Yakima County, Washington.  A copy of this mortgage is attached as Exhibit I. This mortgage was recorded March 17, 2015, as Auditor's File No. 7867128, Official Records of Yakima County, Washington.  This mortgage still exists of record as a lien upon the real property described therein. Specifically, the property described in the mortgages includes:

(a)    Real property legally described as the following:

Tract B of Short Plat recorded in Book M of Short Plats, page 42, as recorded under Auditor's File No. 2485900,

FIRST AMENDED COMPLAINT - 3

records of Yakima County, Washington; EXCEPT that portion thereof described as follows: Beginning at the Northeast corner of Tract A of said Short Plat; Thence 89°57'58" East, parallel to the South line of said Tract B, 113.96 feet Thence South 0°10'43" East, parallel to the East line of said Tract B, 86.25 feet; Thence North 89°57'58" West, 11.23 feet, to the Southeast corner of Tract A; Thence North 2°19'30" West, 86.32 feet to the point of beginning. AND EXCEPT that portion of Tract B lying North of the Roza Irrigation Canal District Canal.

Postal Address: 3273 Roza Drive, Yakima County, Washington, 98953, Tax No. 201112-41402

(hereinafter referred to as "Farm Property").

(b)    Real property legally described as the following:

Lot 30, LENSEIGNE FARMS PHASE 2, recorded September 16, 2004, under Auditor's File Number 7419970, records of Yakima County, Washington.

Postal Address: 105 S. Gelena Street, Moxee, Washington, 98936, Tax No. 191201-44532

(hereinafter referred to as "Residence").

10.    To further secure the payment of the promissory notes described in paragraphs 3, 5, 6, and 8, security agreements dated November 12, 2013, and March 11, 2015, describing irrigation equipment appurtenant to the real property, wind machines, and farm equipment, were executed by Defendant Torres. Copies of these security agreements are attached as Exhibits J and K, respectively. These security agreements were perfected by the filing of a financing statement with the Washington

FIRST AMENDED COMPLAINT - 4

Secretary of State on November 22, 2013, as File No. 2013-326-4141-5. A copy of the financing statement is attached as Exhibit L.

11.    Pursuant the security statements described in paragraph 9, FSA has a perfected security interest in the following described wind machines and farm equipment located in the State of Washington:

1) 1990 Ford 4230 Tractor, SN 62-86 DTF/1;

2) 1957 Ford 800 Tractor, SN NDA 4024B;

3) Metters Orchard Aid 400 Gallon Speed Sprayer;

4) Bush Hog 8ft Mower;

5) Perfect 8ft Mower, SN OB3780;

6) Bin Trailer, 4-Bin Hydraulic Lift w/Charlynn Pump;

7) Mistifier SS 100 Gallon Weed Sprayer;

8) Rears Bin Pak Forks, 3 Point;

9) Massey Ferguson MF227 Back Blade, SN 000127;

10) 2003 Polaris Magnum 330 ATV;

11) Various Orchard Ladders, 8-12 Foot;

12) Homemade Orchard Ladder Trailer;

13) Howse Mower, 3 Point; and the

14) 25 Gallon Sprayer, Mounted on 3x4 Trailer.

12.    In order to perfect its interest in any equipment that may be considered a fixture, FSA filed its financing statement on February 4, 2014, as Instrument No. 7830537; and an amendment to the financing statement on July 1, 2014, as Instrument No 7843786, with the Official Records of Yakima County, Washington. Copies of the

FIRST AMENDED COMPLAINT - 5

financing statement and amendment statement are attached as Exhibits M and N, respectively.

13.     Defendant Torres is delinquent in the payment of her indebtedness. In accordance with the provisions of the promissory notes, rescheduled promissory notes, security agreements and mortgages described in paragraphs 3 through 10, and after taking all actions required under applicable regulations, FSA declared the indebtedness to be immediately due and payable by letter sent March 6, 2017, by certified and regular mail.

14.     On May 3, 2018, Defendant Elsa Torres filed for Chapter 13 bankruptcy protection, Case No. 18-01277-FLK13. On June 29, 2018, the United States, on behalf of the Farm Service Agency ("FSA"), obtained relief from stay from the bankruptcy court as to the aforementioned farm equipment previously owned by Ms. Torres. *In re Torres*, Case No. 18-01277-FLK13 (Bankr. E.D. Wash.), ECF No. 35. That equipment has been sold and the proceeds applied to Defendant Torres' outstanding balance owed to FSA. On April 25, 2019, FSA and Defendant Torres entered into a stipulation in the bankruptcy proceeding whereby Defendant Torres agreed to execute a new mortgage describing the Residence, granting FSA an interest in the Residence, and agreed to allow FSA to proceed with the foreclosure of the Farm Property. *Id.* at ECF No. 72. A copy of the stipulation is attached as Exhibit O. On May 7, 2019, Defendant Torres' Chapter 13 plan was confirmed by the bankruptcy court. *Id.* at ECF

FIRST AMENDED COMPLAINT - 6

No. 78. On May 10, 2019, the bankruptcy court granted FSA relief from stay as to the Farm Property owned by Defendant Torres in order to proceed with the foreclosure of that real property. *Id.* at ECF No. 84.

15.     Defendant Northwest Farm Credit Services, PCA, claims an interest in the Farm Property located in Yakima County, Washington, owned by Defendant Torres by reason of a line of credit mortgage recorded February 4, 2014, as Auditor's File No. 7830538 and 7830539, Official Records of Yakima County, Washington.

16.     Pursuant to the stipulation in the bankruptcy proceeding, Defendant Torres agreed that the amount of FSA's allowed claim secured by the Farm Property is $428,589.24.

17.     The interests of all Defendants are inferior to the interest of the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.     Against Defendant Elsa Leticia Torres in the amount of $428,589.24, plus interest to accrue at the rate of $39.2098 per day from and after March 5, 2019, to the date of judgment plus interest from the date of judgment at the legal rate until paid in full, for costs of suit, including the filing fee allowed pursuant to 28 USC § 2412(a)(2), and other proper relief.

2.     Adjudging and decreeing said amount to be a prior lien upon the Farm Property described in the mortgages, and in the security agreements executed by

FIRST AMENDED COMPLAINT - 7

Defendant Torres and delivered to FSA, describing the personal property owned by Defendant Torres in Yakima County, Washington.

3.    Directing that the mortgages and security agreements be foreclosed; that the Farm Property be sold by the United States Marshal for the Eastern District of Washington in the manner provided by law; that the parties hereto be allowed to bid at the foreclosure sale; that the purchaser at said sale of the real property and fixtures shall be issued a Certificate of Sale of Real Property and that at the termination of the redemption period the Marshal issue his Deed.

4.    Directing that the proceeds realized from the sale of the Farm Property be applied as follows:  First, in payment of attorneys' fees, costs, and expenses of this suit, including but not limited to, the cost of appraisal of real property; and second in payment of Plaintiff's judgment.

5.    Decreeing that the Defendants and all persons claiming by, through or under them, be forever barred and foreclosed from asserting any title or interest in and to the real and personal property owned by Defendant Torres, except the right of redemption provided by law.

/ /

/ /

/ /

/ /

FIRST AMENDED COMPLAINT - 8

1

2      6.      Giving such other and further relief as the court may deem just and

3  equitable.

4      RESPECTFULLY SUBMITTED:    August 7, 2019.

5

6                                  William D. Hyslop
                                   United States Attorney
7

8
                                   *s/Brian M. Donovan*
9                                  Brian M. Donovan
10                                 Assistant United States Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  FIRST AMENDED COMPLAINT - 9

EXHIBIT A

This form is available electronically.

Form Approved - OMB No. 0560-0237
*(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

**FSA-2026**
(12-05-12)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name<br>Elsa Leticia Torres | 2. State<br>Washington | 3. County<br>Yakima |
|---|---|---|

| 4. Case Number<br>▮▮▮▮XXXXXXXXX | 5. Fund Code<br>41 | 6. Loan Number<br>01 | 7. Date<br>January 31, 2014 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE<br><br>FO-Regular-SDA-Gender | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

- [X] Initial loan
- [ ] Conservation easement
- [ ] Deferred payments
- [ ] Consolidation
- [ ] Rescheduling
- [ ] Debt write down
- [ ] Subsequent loan
- [ ] Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*  Yakima, Washington  or at such other place as the Government may later designate in writing, the principal sum of *(b)*  Three Hundred Thousand and no/100  dollars *(c)* ($  300,000.00  ), plus interest on the unpaid principal balance at the RATE of *(d)*  Four and one-eighth  percent *(e)*  ~~4.25~~ 4.125 % per annum. ~~FAT 3/11/15~~ If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*  -40-  installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 15,441.00 | 1/31/2015 | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

and *(d)* $  15,441.00  thereafter on the *(e)*  31st of January  of each *(f)*  year  until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*  -40-  years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial  Q|T   Date  1.31.14

FSA-2026 (12-05-12)                                                                                          Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>(MM-DD-YYYY) | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>(MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _____GK_____ Date ___1·31·14___

FSA-2026 (12-05-12)

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

ELSA LETICIA TORES

105 So. Galena Street
Moxee, Washingtn  98936

NOTE:    *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

EXHIBIT B

*7 8 3 0 5 3 5   8*

FILE#   7830535
YAKIMA COUNTY, WA   ✓
02/04/2014  11:20:22AM
MORTGAGE
PAGES:  8
PACIFIC ALLIANCE TITLE COMPANY

Recording Fee: 79.00

Farm Service Agency
1606 Perry Street
Yakima, Washington 98902

FSA-2029 WA                      Position 5              Form Approved - OMB No. 0560-0237
(09-17-08)        *(See Page 6 for Privacy Act and Public Burden Statements.)*

UNITED STATES DEPARTMENT OF AGRICULTURE
Farm Service Agency

1025081                    MORTGAGE FOR WASHINGTON   2

THIS MORTGAGE ("instrument") is made on _____January 31_____, 2014____. The mortgagor is
Elsa Leticia Torres
_____ ("Borrower") whose mailing address is ____105 So. Galena Street____
Moxee, Washington  98936 _____. This instrument is given to the United States of America,
acting through the Farm Service Agency, United States Department of Agriculture ("Government"), located at
1606 Perry Street, Suite A, Yakima, Washington  98902
This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements
(collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the
Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 01-31-2014 | $300,000.00 | 4.125% | 01-31-2054 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be
increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the
above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2)
recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of
all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set
forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government pursuant to the Consolidation Farm and Rural Development Act, 7 U.S.C.
§ 1921 et. seq., as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following
described property situated in the State of Washington, County or Counties of ·Yakima·
Assessor's Tax Parcel Numbers: 201112-41402
Abbreviated Legal Description : Ptn Tract B of SP recorded in Book M SP pg 42 Auditor's
File No. 2485900

Additional Legal Description See Exhibit "A" Attached

Initial_____ date 1·31·14              FSA-2029 WA (09-17-08) Page 1 of 7

RECEIVED
MAR 14 2014
YAKIMA COUNTY FSA

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1.  **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2.  **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

3.  **Application of payments.** Unless applicable law or Government's regulations provide otherwise, all payments received by the Government shall be applied in the following order of priority:  (a) advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4.  **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5.  **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and  (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6.  **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et. seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7.  **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this

Initial ᎶΙϯ  date  1·31·14                          FSA-2029 WA (09-17-08) Page 2 of 7

lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8.   **Protection of lien.**  Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note.  Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9.   **Authorized purposes.**  Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10.  **Repair and operation of property.**  Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and  (d) operate the property in a good and husbandlike manner.  Borrower shall not  (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11.  **Legal compliance.**  Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12.  **Transfer or encumbrance of property.**  Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13.  **Inspection.**  At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14.  **Hazardous substances.**  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property.  The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property.  Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property.  Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any Federal, state, or local environmental law or regulation.  Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.  As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15.  **Adjustment; release; waiver; forbearance.**  In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and  (f) waive any other of its rights under this instrument.  Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing.  HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

Initial ꞁꞁ  date  1.31.14                                     FSA-2029 WA (09-17-08) Page 3 of 7

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

Initial ꟼꟼ date 1·31·14

FSA-2029 WA (09-17-08) Page 4 of 7

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law; and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

As Individuals                                          As Corporation (etc)

_____                          _____
ELSA LETICIA TORRES                                     (name)


_____                          _____
(name)                                                  (name)


Initial ELT  date 1.31.14                              FSA-2029 WA (09-17-08) Page 5 of 7

| NOTE: | *The following statements are made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of an application or its rejection.* |
| | |
| | *According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR STATE FSA OFFICE.** |

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD). USDA is an equal opportunity provider and employer.*

Initial _GH_ date _1·31·14_

FSA-2029 WA (09-17-08) Page 6 of 7

**ACKNOWLEDGMENT**

STATE OF WASHINGTON
COUNTY OF    YAKIMA                  }ss.   (Individual)

On this      31st      day of   January, 2014       before me personally appeared
ELSA LETICIA TORRES         , to be known to me to be the same person(s) whose
name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the
instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires:
11-14-15

NOTARY PUBLIC

TAMRA L. RANCE
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
NOVEMBER 14, 2015

STATE OF WASHINGTON
COUNTY OF                }ss.

The foregoing instrument was acknowledged before me on this           day of
            , by                      , President and
            , Secretary of                , a
                        corporation, on behalf of the corporation.

My commission expires:

NOTARY PUBLIC

STATE OF WASHINGTON
COUNTY OF                }ss.   (Partnership)

The foregoing instrument was acknowledged before me on this           day of
            , by                     ,
Partners, on behalf of the                
, a                        Partnership.

My commission expires:

NOTARY PUBLIC

Initial G H  date 1.31.14                FSA-2029 WA (09-17-08) Page 7 of 7

**EXHIBIT A**

BORROWER: Elsa Leticia Torres

LEGAL DESCRIPTION:

Tract B of Short Plat recorded in book M of Short Plats, page 42, as recorded under Auditor's File No. 2485900, records of Yakima County, Washington.

EXCEPT that portion thereof described as follows:

Beginning at the Northeast corner of Tract A of said Short Plat;
thence 89°57'58" East, parallel to the South line of said Tract B, 113.96 feet;
thence South 0°10'43" East, parallel to the East line of said Tract B, 86.25 feet;
thence North 89°57'58" West, 11.23 feet, to the Southeast corner of Tract A;
thence North 2°19'30" West, 86.32 feet to the point of beginning.

AND EXCEPT that portion of Tract B lying North of the Roza Irrigation Canal District Canal.


ASSESSOR'S PARCEL NUMBER:  201112-41402


Subject to all valid outstanding easements, rights-of-way, mineral leases, mineral reservations, and mineral conveyances of record.

Fixtures include all irrigation equipment, now owned and used, in whole or in part, to irrigate the mortgaged property, together with all similar goods which may be acquired at any time, any additions, replacements, substitutions and accessions. The irrigation system includes, but is not limited to, the following items:

Initial _G l t_    Date _1·31·14_

# EXHIBIT C

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

This form is available electronically.

| FSA-2026 | U.S. DEPARTMENT OF AGRICULTURE | Position 2 |
|---|---|---|
| (12-05-12) | Farm Service Agency | |

## PROMISSORY NOTE

| 1. Name<br>Elsa Leticia Torres | | 2. State<br>Washington | 3. County<br>Yakima |
|---|---|---|---|
| 4. Case Number<br>████-XXXXXXXXX | 5. Fund Code<br>44 | 6. Loan Number<br>02 | 7. Date<br>January 31, 2014 |

| 8. TYPE OF ASSISTANCE | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|
| OL-BF-SDA-Regular-1 year<br><br>**RESCHEDULED** | ☒ Initial loan ☐ Conservation easement ☐ Deferred payments<br>☐ Consolidation ☐ Rescheduling ☐ Debt write down<br>☐ Subsequent loan ☐ Reamortization |

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*   Yakima, Washington   or at such other place as the Government may later designate in writing, the principal sum of *(b)*   One Hundred Twelve Thousand Five Hundred and no/100   dollars *(c)* ($ 112,500.00   , plus interest on the unpaid principal balance at the RATE of *(d)*   One and seven-eighths   percent *(e)*   1.875   %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*   -1-   installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 115,621.00 | 7/01/2015 | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | **RESCHEDULED** | $ | |

and *(d)* $  N/A   thereafter on the *(e)* N/A   of each *(f)* N/A   until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*   -2-   years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (866) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

Initial  GH   Date  1·31·14

FSA-2026 (12-05-12)                                                                                      Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _G H_   Date _1-31-14_

p. 25

FSA-2026 (12-05-12)                                                                                    Page 3 of 3

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**


_Elsa Leticia Tores_
ELSA LETICIA TORES


                                        105 So. Galena Street
                                        Moxee, Washingtn  98936

NOTE:    *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

# EXHIBIT D

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

| FSA-2026 | U.S. DEPARTMENT OF AGRICULTURE | Position 2 |
|---|---|---|
| (12-05-12) | Farm Service Agency | |

## PROMISSORY NOTE

| 1. Name<br>Elsa Leticia Torres | 2. State<br>Washington | 3. County<br>Yakima |
|---|---|---|
| 4. Case Number<br>████ XXXXXXXXX | 5. Fund Code<br>44 | 6. Loan Number<br>05 | 7. Date<br>March 11, 2015 |

| 8. TYPE OF ASSISTANCE | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|
| | ☐ Initial loan  ☐ Conservation easement  ☐ Deferred payments<br>☐ Consolidation  ☒ Rescheduling  ☐ Debt write down<br>☐ Subsequent loan  ☐ Reamortization |

10.  FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*     Yakima, Washington     or at such other place as the Government may later designate in writing, the principal sum of *(b)*     Thirty-One Thousand Four Hundred Ninety-Five and 52/100     dollars *(c)* ($ 31,495.52                  , plus interest on the unpaid principal balance at the **RATE** of *(d)*     One and seven-eighths     percent *(e)*  1.875     %) per annum.  If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address.  The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11.  Principal and interest shall be paid in *(a)*     -15-
installments as indicated  below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 2,429.00 | 03/11/2016 | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

and *(d)* $  2,429.00     thereafter on the *(e)*  11th of March     of each *(f)*  Year     until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*     -15-     years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12.  If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government.  Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC  20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay).  USDA is an equal opportunity provider and employer.

Initial _ALX_   Date _3·11·15_

p. 28

FSA-2026 (12-05-12)

Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| 44-02 | $ 112,500.00 | 1.875 % | 01/31/2014 | Elsa Leticia Torres | 07/01/2015 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _GLT_    Date _3·11·15_

FSA-2026 (12-05-12)

20.  The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21.  Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22.  This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8.  This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23.  Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

_Elsa R Tores_
ELSA LETICIA TORES

105 So. Galena Street
Moxee, Washingtn  98936

NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees.  The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

EXHIBIT E

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

This form is available electronically.

**FSA-2026**
(12-05-12)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name Elsa Leticia Torres | 2. State Washington | 3. County Yakima |
|---|---|---|

| 4. Case Number ████XXXXXXXX | 5. Fund Code 44 | 6. Loan Number 03 | 7. Date January 31, 2014 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|
| OL-BF-SDA-Regular-7 year  RESCHEDULED | ☐ Initial loan  ☐ Conservation easement  ☐ Deferred payments<br>☐ Consolidation  ☐ Rescheduling  ☐ Debt write down<br>☒ Subsequent loan  ☐ Reamortization |

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)* Yakima, Washington or at such other place as the Government may later designate in writing, the principal sum of *(b)* Twenty Thousand and no/100 dollars *(c)* ($ 20,000.00 , plus interest on the unpaid principal balance at the RATE of *(d)* One and seven-eighths percent *(e)* 1.875 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* -7- installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 3,076.00 | 1/31/2015 | $ 3,076.00 | 1/31/2016 |
| $ 3,076.00 | 1/31/2017 | $ 3,076.00 | 1/31/2018 |
| $ 3,076.00 | 1/31/2019 | $ 3,076.00 | 1/31/2020 |
| $ 3,076.00 | 1/31/2021 | $ | |

and *(d)* $ N/A thereafter on the *(e)* N/A of each *(f)* N/A until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* -7- years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments. RESCHEDULED

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC  20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial ___  Date 1·31·14

FSA-2026 (12-05-12)                                                                        Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>(MM-DD-YYYY) | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>(MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _____ 9lt _____ Date _1·3·14_

FSA-2026 (12-05-12)                                                                                          Page 3 of 3

20.  The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21.  Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22.  This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8.  This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23.  Presentment, to protest, and notice are waived.

**Signature(s) As Described In State Supplement:**


*[signature]*
ELSA LETICIA TORES


105 So. Galena Street
Moxee, Washingtn  98936

NOTE:    *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

# EXHIBIT F

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

| FSA-2026 (12-05-12) | U.S. DEPARTMENT OF AGRICULTURE Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name Elsa Leticia Torres | | 2. State Washington | 3. County Yakima |
|---|---|---|---|
| 4. Case Number ████XXXXXXXX | 5. Fund Code 44 | 6. Loan Number 06 | 7. Date March 11, 2015 |

| 8. TYPE OF ASSISTANCE | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☐ Initial loan      ☐ Conservation easement      ☐ Deferred payments

☐ Consolidation      ☒ Rescheduling      ☐ Debt write down

☐ Subsequent loan      ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*  Yakima, Washington  or at such other place as the Government may later designate in writing, the principal sum of *(b)*  Twenty Thousand Four Hundred Fifteen and 07/100  dollars *(c)* ($ 20,415.07  ), plus interest on the unpaid principal balance at the **RATE** of *(d)*  One and seven-eighths  percent *(e)*  1.875  %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*  -15-  installments as indicated  below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 1,574.00 | 03/11/2016 | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

and *(d)* $  1,574.00  thereafter on the *(e)*  11th of March  of each *(f)*  Year  until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*  -15-  years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial _ELT_   Date _3.11.15_

FSA-2026 (12-05-12)

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>(MM-DD-YYYY) | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>(MM-DD-YYYY) |
|---|---|---|---|---|---|
| 44-03 | $  20,000.00 | 1.875  % | 01/31/2014 | Elsa Leticia Torres | 01/31/2021 |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial  GLT      Date  3.11.15

FSA-2026 (12-05-12)

Page 3 of 3

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

Signature(s) As Described In State Supplement:

ELSA LETICIA TORES

105 So. Galena Street
Moxee, Washingtn  98936

NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

# EXHIBIT G



```
*7830536 8*
```

FILE#   7830536 ✓
YAKIMA COUNTY, WA
02/04/2014  11:20:23AM
MORTGAGE
PAGES: 8
PACIFIC ALLIANCE TITLE COMPANY

Recording Fee: 79.00

Farm Service Agency
1606 Perry Street
Yakima, Washington 98902

**FSA-2029 WA**
(09-17-08)

Position 5              Form Approved - OMB No. 0560-0237
*(See Page 6 for Privacy Act and Public Burden Statements.)*

UNITED STATES DEPARTMENT OF AGRICULTURE
Farm Service Agency

1025081

## MORTGAGE FOR WASHINGTON 3

THIS MORTGAGE ("instrument") is made on _____January 31_____ , 2014 . The mortgagor is
Elsa Leticia Torres
_____ ("Borrower") whose mailing address is ____105 So. Galena Street
Moxee, Washington  98936_____ . This instrument is given to the United States of America,
acting through the Farm Service Agency, United States Department of Agriculture ("Government"), located at
1606 Perry Street, Suite A, Yakima, Washington  98902 .
This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements
(collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the
Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 01-31-2014 | $112,500.00 | 1.875% | 01-31-2021 |
| 01-31-2014 | $20,000.00 | 1.875% | 01-31-2016 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be
increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the
above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2)
recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of
all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set
forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government pursuant to the Consolidation Farm and Rural Development Act, 7 U.S.C.
§ 1921 et. seq., as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following
described property situated in the State of Washington, County or Counties of Yakima .
**Assessor's Tax Parcel Numbers:** 201112-41402
**Abbreviated Legal Description :** Ptn Tract B of SP recorded in Book M SP pg 42 Auditor's
File No. 2485900

Additional Legal Description See Exhibit "A" Attached

Initial ELT  date 1.31.14                    FSA-2029 WA (09-17-08) Page 1 of 7

RECEIVED
MAR 14 2014
YAKIMA COUNTY FSA

p. 40

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

  1.  **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

  2.  **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

  3.  **Application of payments.** Unless applicable law or Government's regulations provide otherwise, all payments received by the Government shall be applied in the following order of priority:  (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

  4.  **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

  5.  **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and  (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

  Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

  Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

  6.  **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et. seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

  7.  **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this

Initial _QH_   date _1·31·14_                        FSA-2029 WA (09-17-08) Page 2 of 7

lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8. **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9. **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10. **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11. **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12. **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13. **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14. **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any Federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15. **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

Initial GH date 1·3·14

FSA-2029 WA (09-17-08) Page 3 of 7

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

Initial G H    date 1·3·14

FSA-2029 WA (09-17-08) Page 4 of 7

p. 43

**26. Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

**27. Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may:  (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable,  (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property,  (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases,  (d) foreclose this instrument and sell the property as prescribed by law; and (e) enforce any and all other rights and remedies provided herein or by present or future law.

**28. State law.** Borrower agrees that the Government will not be bound by any present or future State laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

**29. Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

**30. Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of:  (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and  (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

As Individuals

As Corporation (etc)

ELSA LETICIA TORRES

_____
(name)

_____
(name)

_____
(name)

Initial _____ date 1·31·14

FSA-2029 WA (09-17-08) Page 5 of 7

NOTE:    *The following statements are made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms.  The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses.  Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law.  In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies.  Disclosure of the information requested is voluntary.  However, failure to disclose certain items of information requested, including Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of an application or its rejection.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*
**RETURN THIS COMPLETED FORM TO YOUR STATE FSA OFFICE.**

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD).  USDA is an equal opportunity provider and employer.*

Initial _____ date 1·31·14

FSA-2029 WA (09-17-08) Page 6 of 7

## ACKNOWLEDGMENT

STATE OF WASHINGTON
COUNTY OF      YAKIMA                              } ss.    (Individual)

On this _____31st_____ day of ___January, 2014_____ before me personally appeared
ELSA LETICIA TORRES_____ , to be known to me to be the same person(s) whose
name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the
instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires:
_11-14-15_

NOTARY PUBLIC TAMRA L. RANCE

NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
NOVEMBER 14, 2015

STATE OF WASHINGTON
COUNTY OF _____ } ss.    (Corporation)

The foregoing instrument was acknowledged before me on this _____ day of
_____ , by _____ , President and
_____ , Secretary of _____ , a
_____ corporation, on behalf of the corporation.

My commission expires:

_____                    _____

NOTARY PUBLIC

STATE OF WASHINGTON
COUNTY OF _____ } ss.    (Partnership)

The foregoing instrument was acknowledged before me on this _____ day of
_____ , by _____ ,
Partners, on behalf of the _____
, a _____ Partnership.

My commission expires:

_____                    _____

NOTARY PUBLIC

Initial _Ett_ date _1·31·14_

FSA-2029 WA (09-17-08) Page 7 of 7

**EXHIBIT A**

BORROWER:  Elsa Leticia Torres

LEGAL DESCRIPTION:

Tract B of Short Plat recorded in book M of Short Plats, page 42, as recorded under Auditor's File No. 2485900, records of Yakima County, Washington.

EXCEPT that portion thereof described as follows:

Beginning at the Northeast corner of Tract A of said Short Plat;
thence 89°57'58" East, parallel to the South line of said Tract B, 113.96 feet;
thence South 0°10'43" East, parallel to the East line of said Tract B, 86.25 feet;
thence North 89°57'58" West, 11.23 feet, to the Southeast corner of Tract A;
thence North 2°19'30" West, 86.32 feet to the point of beginning.

AND EXCEPT that portion of Tract B lying North of the Roza Irrigation Canal District Canal.


ASSESSOR'S PARCEL NUMBER:  201112-41402


Subject to all valid outstanding easements, rights-of-way, mineral leases, mineral reservations, and mineral conveyances of record.

Fixtures include all irrigation equipment, now owned and used, in whole or in part, to irrigate the mortgaged property, together with all similar goods which may be acquired at any time, any additions, replacements, substitutions and accessions.  The irrigation system includes, but is not limited to, the following items:

Initial _G\t_ Date _1·31·14_

# EXHIBIT H

Form Approved - OMB No. 0560-0237

This form is available electronically.
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

| FSA-2026<br>(12-05-12) | U.S. DEPARTMENT OF AGRICULTURE<br>Farm Service Agency | Position 2 |
|---|---|---|

### PROMISSORY NOTE

| 1. Name<br>Elsa Leticia Torres | 2. State<br>Washington | 3. County<br>Yakima |
|---|---|---|

| 4. Case Number<br>▉▉-XXXXXXXXX | 5. Fund Code<br>44 | 6. Loan Number<br>04 | 7. Date<br>March 11, 2015 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE<br><br>OL-BF-SDA-Regular-1 year | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☐ Initial loan     ☐ Conservation easement     ☐ Deferred payments

☐ Consolidation     ☐ Rescheduling     ☐ Debt write down

☒ Subsequent loan     ☐ Reamortization

10.  FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*     Yakima, Washington     or at such other place as the Government may later designate in writing, the principal sum of *(b)*     One Hundred Twenty-Six Thousand and no/100

dollars *(c)* ($  126,000.00                        , plus interest on the unpaid principal balance at the **RATE** of *(d)*     Two and one-half

percent *(e)*  2.50     %) per annum.  If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address.  The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11.  Principal and interest shall be paid in *(a)*     -2-

installments as indicated  below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 130,730.00 | 7/01/2016 | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

and *(d)* $   N/A          thereafter on the *(e)*  N/A            of each *(f)* N/A           until the
principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*     -2-            years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government.  Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC  20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay).  USDA is an equal opportunity provider and employer.*

Initial  G|T    Date  3.11.15

FSA-2026 (12-05-12)

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>(MM-DD-YYYY) | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>(MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _GLK_    Date _3·11·15_

FSA-2026 (12-05-12)                                                                                    Page 3 of 3

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**


_____
ELSA LETICIA TORES


                              105 So. Galena Street
                              Moxee, Washingtn  98936

NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

# EXHIBIT I



FILE#    7867128 ✓
YAKIMA COUNTY, WA
03/17/2015  10:58:42AM
MORTGAGE
PAGES: 8
FARM SERVICE AGENCY
B & J ORCHARD & VINEYARD
Recording Fee: 79.00

Farm Service Agency
1606 Perry Street, Suite A
Yakima, Washington 98902

FSA-2029 WA                    Position 5              Form Approved - OMB No. 0560-0237
(09-17-08)        (See Page 6 for Privacy Act and Public Burden Statements.)

UNITED STATES DEPARTMENT OF AGRICULTURE
Farm Service Agency

## MORTGAGE FOR WASHINGTON

THIS MORTGAGE ("instrument") is made on _____ March 11 ___, 2015 ___. The mortgagor is
Elsa Leticia Torres
_____ ("Borrower") whose mailing address is ____ 105 So. Galena Street
Moxee, Washington  98936 _____. This instrument is given to the United States of America,
acting through the Farm Service Agency, United States Department of Agriculture ("Government"), located at
1606 Perry Street, Suite A, Yakima, Washington  98902
This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements
(collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the
Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 03-11-2015 | $126,000.00 | 2.500% | 03-11-2017 |
| 03-11-2015 | $31,495.52 | 1.875% | 03-11-2030 |
| 03-11-2015 | $20,415.07 | 1.875% | 03-11-2030 |
| 01-31-2014 | $300,000.00 | 4.125% | 01-31-2054 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be
increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the
above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2)
recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of
all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set
forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government pursuant to the Consolidation Farm and Rural Development Act, 7 U.S.C.
§ 1921 et. seq., as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following
described property situated in the State of Washington, County or Counties of Yakima
Assessor's Tax Parcel Numbers: 201112-41402; 191201-44532
Abbreviated Legal Description : Ptn Tract B of SP recorded in Book M SP pg 42 Auditor's
File No. 2485900 & Plat Leseigne Farms Phase 2: Lot 30 AF 7419970

Additional Legal Description See Exhibit "A" Attached

Initial _QLT_  date _3.11.15_              FSA-2029 WA (09-17-08) Page 1 of 7

p. 53

RECEIVED

APR 3 0 2015

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1. **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2. **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

3. **Application of payments.** Unless applicable law or Government's regulations provide otherwise, all payments received by the Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4. **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5. **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in:
(a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6. **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et. seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7. **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this

Initial GAK  date 3·11·15

lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8. **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9. **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10. **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11. **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12. **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13. **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14. **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any Federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15. **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

Initial GUX    date 3·11·15

FSA-2029 WA (09-17-08) Page 3 of 7

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

Initial _SUt_ date _3·11·15_                                   FSA-2029 WA (09-17-08) Page 4 of 7

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law; and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

As Individuals                                              As Corporation (etc)


_ELSA LETICIA TORRES_                                        (name)



(name)                                                       (name)


Initial _ULT_  date _3.11.15_                               FSA-2029 WA (09-17-08) Page 5 of 7

NOTE:    The following statements are made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms.  The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses.  Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law.  In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies.  Disclosure of the information requested is voluntary.  However, failure to disclose certain items of information requested, including Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of an application or its rejection.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.
**RETURN THIS COMPLETED FORM TO YOUR STATE FSA OFFICE.**

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD).  USDA is an equal opportunity provider and employer.

Initial GAF   date 3·11·15

**ACKNOWLEDGMENT**

STATE OF WASHINGTON
COUNTY OF ___YAKIMA_____ } *ss.*    (Individual)

On this ___11th___ day of ___March, 2015_____ before me personally appeared

___ELSA LETICIA TORRES_____ , to be known to me to be the same person(s) whose

name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the

instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires:
May 5, 2017

_Lisa M Ruff_____
Lisa M. Ruff
NOTARY PUBLIC

STATE OF WASHINGTON
COUNTY OF _____ } *ss.*    (Corporation)

The foregoing instrument was acknowledged before me on this _____ day of

_____ , by _____ , President and

_____ , Secretary of _____ , a

_____ corporation, on behalf of the corporation.

My commission expires:

_____        _____

NOTARY PUBLIC

STATE OF WASHINGTON
COUNTY OF _____ } *ss.*    (Partnership)

The foregoing instrument was acknowledged before me on this _____ day of

_____ , by _____ ,

Partners, on behalf of the _____

, a _____ Partnership.

My commission expires:

_____        _____

NOTARY PUBLIC

Initial _ELT_ date _3·11·15_

FSA-2029 WA (09-17-08) Page 7 of 7

**EXHIBIT A**

BORROWER:  Elsa Leticia Torres

LEGAL DESCRIPTION:

Parcel A

Tract B of Short Plat recorded in book M of Short Plats, page 42, as recorded under Auditor's File No. 2485900, records of Yakima County, Washington.

EXCEPT that portion thereof described as follows:

Beginning at the Northeast corner of Tract A of said Short Plat;
thence 89°57'58" East, parallel to the South line of said Tract B, 113.96 feet;
thence South 0°10'43" East, parallel to the East line of said Tract B, 86.25 feet;
thence North 89°57'58" West, 11.23 feet, to the Southeast corner of Tract A;
thence North 2°19'30" West, 86.32 feet to the point of beginning.

AND EXCEPT that portion of Tract B lying North of the Roza Irrigation Canal District Canal.


ASSESSOR'S PARCEL NUMBER:  201112-41402

Parcel B

Section 1 Township 12 Range 19: Plat LESEIGNE FARMS PHASE: LOT 30 AF 7419970

Subject to all valid outstanding easements, rights-of-way, mineral leases, mineral reservations, and mineral conveyances of record.

Fixtures include all irrigation equipment, now owned and used, in whole or in part, to irrigate the mortgaged property, together with all similar goods which may be acquired at any time, any additions, replacements, substitutions and accessions.  The irrigation system includes, but is not limited to, the following items:


Initial _GLt_____  Date _3·11·15_____

# EXHIBIT J

This form is available electronically.

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Form Approved - OMB No. 0560-0238 |
|---|---|---|

Form Approved - OMB No. 0560-0238
*(See Page 7 for Privacy Act and Public Burden Statements).*

**FSA-2028**
(09-03-10)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 1

**SECURITY AGREEMENT**

1. **THIS SECURITY AGREEMENT,** dated *(a)*___November 12, 2013_____, is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)*_____
   **ELSA LETICIA TORRES**_____

(Debtor), whose mailing address is *(c)*_____
   **105 S GALENA STREET, MOXEE, WA 98936**_____

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial ___G. L. O.___ Date ___11.12.13___

FSA-2028 (09-03-10)                                                                                    Page 2 of 7

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are
     planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)*
     within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security
     Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted,
     to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
|  |  |  |  |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all
payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas
existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds
derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial  ЄLt        Date  11·12·13

FSA-2028 (09-03-10)

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* __Washington__ :

| (2)<br>Line<br>No. | (3)<br>Quantity | (4)<br>Kind | (5)<br>Manufacturer | (6)<br>Size and Type | (7)<br>Condition | (8)<br>Year | (9)<br>Serial or Model No. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial GUF_____  Date __11·12·13__

FSA-2028 (09-03-10)                                                                                    Page 4 of 7

(d)  All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals,
     other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter
     acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited
     to the following located in the State(s) of *(1)*  __Washington__ :

| (2)<br>Line No. | (3)<br>Quantity | (4)<br>Kind or Sex | (5)<br>Breed | (6)<br>Color | (7)<br>Weight | (8)<br>Age | (9)<br>Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |
| 0 | 0 | | | | | | |

Initial _GAF_    Date _11·12·13_

FSA-2028 (09-03-10)                                                                                                           Page 5 of 7

(e)  All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

Crops, livestock, supplies, farm products, and farm and other equipment and those to be acquired in the future. All accounts, general intangibles, including, but not limited to, all debtor's rights derived from debtor's participation in an agriculture cooperative (such as co-op retains, equities and revolving funds) and all debtor's rights to payments derived from present or future government farm programs, contracts, or subsidies.

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT :

(a)  Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and *(3)* other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)  Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)  Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d)  Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e)  Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f)  Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)  All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial ____GAT____   Date __11·12·13__

FSA-2028 (09-03-10)                                                                                          Page 6 of 7

4. **IT IS FURTHER AGREED THAT:**

   (a)  Until default, Debtor may retain possession of the collateral.

   (b)  **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

      (1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

      (2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

      (3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

   (c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

   (d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

   (e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

   (f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

   (g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

   (h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial _GIt_     Date _11·12·13_

FSA-2028 (09-03-10)

(i)  The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j)  If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k)  Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l)  **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW .**

5.  **CERTIFICATION**

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements.) If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A.  _Gusa R Torres_                6B. *(Date)* 11·12·13
ELSA LETICIA TORRES

_____            *(Date)* _____
Debtor

---

NOTE:  *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

---

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

# EXHIBIT K

This form is available electronically.

Form Approved - OMB No. 0560-0238
*(See Page 7 for Privacy Act and Paperwork Reduction Act Statements).*

| FSA-2028<br>(11-12-14) | U.S. DEPARTMENT OF AGRICULTURE<br>Farm Service Agency | Position 1 |
|---|---|---|

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT**, *dated (a)* __March 11_____ , 2015_____ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **ELSA LETICIA TORRES,**

(Debtor), whose mailing address is (c) 105 S GALENA ST, MOXEE, WA 98936-9370

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE**, in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _GX_ Date __3.11.15__

FSA-2028 (11-12-14)                                                                   Page 2 of 7

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are
     planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)*
     within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security
     Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to
     be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| Elsa Torres | 48 | YAKIMA, WA | Sec 12 Township 11 Range 20 |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all
payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas
existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived
from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _Elt_  Date _3·11·15_

FSA-2028 (11-12-14)                                                                                    Page 3 of 7

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1) Washington*

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | * 1 | Tractor | Ford | 4230 Diesel 4x4 | Fair | 1990 | 62-86 DTF/1 |
| 2 | * 1 | Tractor/w Bin Lift | Ford | 800 | Fair | 1957 | NDA 4024B |
| 3 | * 1 | Speed Sprayer | FMC | 400 Gallon PTO LV 3055 | Good | | J 96972 |
| 4 | * 1 | Mower | Bush Hog | 8ft 3pt | Good | | |
| 5 | * 1 | Flail Mower | Perfect | 8ft 3pt. PTO | Good | | OB3780 |
| 6 | * 1 | Bin Trailer | | 4 bin single Axel Hyd lift | Fair | | |
| 7 | * 1 | Weed Sprayer | HF Hauff | 100 Gallon 3pt 8' boom | Good | | |
| 8 | * 2 | Bin Pak Forks | Rears | 3 PT | Good | | |
| 9 | * 1 | Back Blade | Massey Ferguson | MF227 | Good | | 000127 |
| 10 | * 1 | 4 Wheeler | Polaris | Magnum 330 ATV | Good | | |
| 11 | 20 * 25 | Ladders | Aluminum | 10ft | Good | | |
| 12 | 7 * 8 | Ladders | Aluminum | 12ft | Good | | |
| 13 | * 3 | Ladders | Aluminim | 8ft | Good | | |
| 14 | * 1 | Orchard Ladder Trailer | Homemade | | Fair | | |
| 15 | * 1 | Mower | | | Good | | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _GMK_  Date  _3·11·15_

FSA-2028 (11-12-14)                                                                 Page 4 of 7

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

__Washington__

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |
| 25 | | | | | | | |
| 26 | | | | | | | |
| 27 | | | | | | | |
| 28 | | | | | | | |

Initial _CMt_  Date _3·11·15_

FSA-2028 (11-12-14)                                                                                      Page 5 of 7

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

Crops, livestock, supplies, farm products, and farm and other equipment and those to be acquired in the future. All accounts, general intangibles, including, but not limited to, all debtor's rights derived from debtor's participation in an agriculture cooperative (such as co-op retains, equities and revolving funds) and all debtor's rights to payments derived from present or future government farm programs, contracts, or subsidies.

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _GAX_ Date _3·11·15_

FSA-2028 (11-12-14)

Page 6 of 7

**4. IT IS FURTHER AGREED THAT:**

(a) Until default, Debtor may retain possession of the collateral.

(b) **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

   (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

   (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

   (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

Initial  GVX    Date  3·11·15

FSA-2028 (11-12-14)                                                                                  Page 7 of 7

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

(m) Debtor(s) acknowledge(s) that Secured Party loaned money to me/us to purchase items of collateral that serve as security for my/our loan, thereby, giving Secured Party a Purchase Money Security Interest in those items of collateral listed in Part 2. (c) or (d) with an asterisk*.

## 5.  CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _Gina R Torr_                              6B. *(Date)*  _3·11·15_
     ELSA LETICIA TORRES

_____                               *(Date)* _____
Debtor

---

NOTE:   *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

---

*The U.S. Department of Agriculture (USDA) prohibits discrimination against its customers, employees, and applicants for employment on the basis of race, color, national origin, age, disability, sex, gender identity, religion, reprisal, and where applicable, political beliefs, marital status, familial or parental status, sexual orientation, or all or part of an individual's income is derived from any public assistance program, or protected genetic information in employment or in any program or activity conducted or funded by the Department. (Not all prohibited bases will apply to all programs and/or employment activities.) Persons with disabilities, who wish to file a program complaint, write to the address below or if you require alternative means of communication for program information (e.g., Braille, large print, audiotape, etc.) please contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). Individuals who are deaf, hard of hearing, or have speech disabilities and wish to file either an EEO or program complaint, please contact USDA through the Federal Relay Service at (800) 877-8339 or (800) 845-6136 (in Spanish).*

*If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, found online at http://www.ascr.usda.gov/complaint_filing_cust.html, or at any USDA office, or call (866) 632-9992 to request the form. You may also write a letter containing all of the information requested in the form. Send your completed complaint form or letter by mail to U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202) 690-7442 or email at program.intake@usda.gov.  USDA is an equal opportunity provider and employer.*

# EXHIBIT L

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Sandy Christensen 5094545746

B. E-MAIL CONTACT AT FILER (optional)
sandy.christensen@wa.usda.gov

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Sandy Christensen 5094545746
Farm Service Agency
1606 Perry Street, Suite A
Yakima   WA 98902

Date of Filing : 11/22/2013
Time of Filing : 08:26:00 AM
File Number   : 2013-326-4141-5
Lapse Date    : 11/22/2018

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Torres | Elsa | Leticia | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 105 So. Galena Street | Moxee | WA | 98936 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| United States of America acting through U.S. Department of Agriculture | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1606 Perry Street, Suite A | Yakima | WA | 98902 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

**Crops, livestock, supplies, farm products, and farm and other equipment and those to be acquired in the future. All accounts, general intangibles, including, but not limited to, all debtor's rights derived from debtor's participation in an agriculture cooperative (such as co-op retains, equities and revolving funds) and all debtor's rights to payments derived from present or future government farm programs, contracts, or subsidies.**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☑ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
1NE

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

PAGE 1 OF 1

International Association of Commercial Administrators (IACA)

# EXHIBIT M

```
*78305373*
```

FILE#    7830537
YAKIMA COUNTY, WA
02/04/2014    11:20:24AM
UCC                    ✓
PAGES: 3
PACIFIC ALLIANCE TITLE COMPANY

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Recording Fee: 74.00

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Sandy Christensen    509-454-5746 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Farm Service Agency
1606 Perry Street, Suite A
Yakima, Washington  98902

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME:  Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Torres | Elsa | L. | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 105 S. Galena Street | Moxee | WA | 98936 | USA |

2. DEBTOR'S NAME:  Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| United States of America acting through U.S. Department of Agriculture | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1606 Perry Street, Suite A | Yakima | WA | 98902 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):  Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

4. COLLATERAL:  This financing statement covers the following collateral:

Subject to all valid outstanding easements, rights-of-way, mineral leases, mineral reservatins, and mineral conveyances of record.  Fixtures include all irrigation equipment, now owned and used, in whole or in part, to irrigate the mortgaged property, together with all similar goods which may be acquired at any time, any additions, replacements, substitutions and accessions.  the irrigation system includes, but is not limited to, the following items:

Parcel #201112-41402

Ptn Tract B of Short Plat recorded in book M of Short Plats, page 42, as recorded under Auditor's File No. 2485900, records of Yakima County, Washington.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|
| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility | ☑ Agricultural Lien    ☐ Non-UCC Filing |

| 7. ALTERNATIVE DESIGNATION (if applicable): | ☐ Lessee/Lessor | ☐ Consignee/Consignor | ☐ Seller/Buyer | ☐ Bailee/Bailor | ☐ Licensee/Licensor |
|---|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA:

RECEIVED

YAKIMA COUNTY FSA

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

OR 9b. INDIVIDUAL'S SURNAME

**Torres**

FIRST PERSONAL NAME

**Elsa**

ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

**L**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

16. Description of real estate:

**See attached Exhibit A**

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

**EXHIBIT A**

BORROWER:  Elsa Leticia Torres

LEGAL DESCRIPTION:

Tract B of Short Plat recorded in book M of Short Plats, page 42, as recorded under Auditor's File No. 2485900, records of Yakima County, Washington.

EXCEPT that portion thereof described as follows:

Beginning at the Northeast corner of Tract A of said Short Plat;
thence 89°57'58" East, parallel to the South line of said Tract B, 113.96 feet;
thence South 0°10'43" East, parallel to the East line of said Tract B, 86.25 feet;
thence North 89°57'58" West, 11.23 feet, to the Southeast corner of Tract A;
thence North 2°19'30" West, 86.32 feet to the point of beginning.

AND EXCEPT that portion of Tract B lying North of the Roza Irrigation Canal District Canal.

ASSESSOR'S PARCEL NUMBER:  201112-41402

Subject to all valid outstanding easements, rights-of-way, mineral leases, mineral reservations, and mineral conveyances of record.

Fixtures include all irrigation equipment, now owned and used, in whole or in part, to irrigate the mortgaged property, together with all similar goods which may be acquired at any time, any additions, replacements, substitutions and accessions.  The irrigation system includes, but is not limited to, the following items:

Initial C t t    Date 1·31· 14

# EXHIBIT N

```
*  7 8 4 3 7 8 6      2  *
```

FILE# 7843786
YAKIMA COUNTY, WA
07/01/2014  12:51:43PM
UCC MISC
PAGES: 2
FARM SERVICE AGENCY

Recording Fee: 73.00

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Sandy Christensen    509-454-5746

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Farm Service Agency
1606 Perry Street, Suite A
Yakima, Washington  98902

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| 7830537           2/04/2014 | (or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ PARTY INFORMATION CHANGE:

Check one of these two boxes:                    AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☑ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☑ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| United States of America acting through U.S. Department of Agriculture | | | |
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1606 Perry Street, Suite A | Yakima | WA | 98902 | USA |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| United States of America acting through U.S. Department of Agriculture | | | |
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER:  Same as item 1a on Amendment form

**7830537**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:  Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME

**United States of America acting through U.S.**

**Department of Agriculture**

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME

OR

| 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Torres | Elsa | L | |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut    ☐ covers as-extracted collateral    ☑ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:

**Ptn Tract B of Short Plat recorded in book M of Short Plats, page 42, as recorded under Auditor's File No. 2485900, records of Yakima County, Washington.**

**Parcel #201112-41402**

18. MISCELLANEOUS:

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)

# EXHIBIT O

Joseph H. Harrington
United States Attorney
Eastern District of Washington
Brian M. Donovan
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

In re:

ELSA TORRES,

                                    Debtor.

NO.  2:18-01277-FLK13

STIPULATION BETWEEN DEBTOR
AND FARM SERVICE AGENCY
REGARDING RELIEF FROM STAY
AS TO CERTAIN REAL PROPERTY
AND AGREED  MODIFICATION OF
THE FARM SERVICE AGENCY
LOAN

The Debtor Elsa Torres "(Debtor"), by and through K. Denny Colvin, counsel for Debtor, and the United States of America, through the Farm Service Agency (FSA) of the United States Department of Agriculture, by and through Joseph H. Harrington, United States Attorney and Brian M. Donovan, Assistant United States Attorney, stipulate and agree, in order to address the objections by FSA to confirmation of the Chapter 13 plan filed in this case, and to Debtor's objections to FSA's motion for relief from stay as to certain real property, that the following terms shall be included and incorporated in the Chapter 13 plan filed by Debtor on May 3, 2018, (the "Plan"), as modified (ECF No. 7):

1.      FSA's amended proof of claim in the amount of $428,589.24 filed March 5, 2019, is valid and the amounts listed on FSA's filed proof of claim control over any contrary amount listed elsewhere.

2.      FSA's claim is secured in the amount of $428,589.24 ("secured amount") as of the date of the confirmation hearing of the Plan by interests in real property outlined below.

### A. Relief From Stay As To The Farm Property

3.      FSA has a security interest in the Debtor's real property identified in the Plan as "48 acres in Zillah" (ECF No. 7 at 5), legally known as:

> Tract B of Short Plat recorded in Book M of Short Plats, page 42, as recorded under Auditor's File No. 2485900, records of Yakima County, Washington; EXCEPT that portion thereof described as follows: Beginning at the Northeast corner of Tract A of said Short Plat; Thence 89°57'58" East, parallel to the South line of said Tract B, 113.96 feet Thence South 0°10'43" East, parallel to the East line of said Tract B, 86.25 feet; Thence North 89°57'58" West, 11.23 feet, to the Southeast corner of Tract A; Thence North 2°19'30" West, 86.32 feet to the point of beginning. AND EXCEPT that portion of Tract B lying North of the Roza Irrigation Canal District Canal.

> Postal Address: 3273 Roza Drive, Yakima County, Washington, 98953, Tax No. 201112-41402

(hereinafter referred to as "Farm Property").

4.      FSA has a first position mortgage on the Farm Property by operation of a mortgage filed on February 4, 2014, securing the promissory note executed by the Debtor for FSA loan 41-01, which has an amount due and owing of $334,891.67 as of March 5, 2019. FSA has a second position mortgage on the Farm Property by operation of a mortgage filed on February 4, 2014, securing two promissory notes executed by the Debtor for FSA loan 44-02, later rescheduled as 44-05, which has an amount due and owing of $22,584.06 as March 5, 2019, and FSA loan 44-03, later rescheduled as 44-06, which has an amount due and owing of $17,549.83 as of March 5, 2019. Creditor Northwest

Farm Credit Services has a third position mortgage on the Farm Property in an amount of its allowed claim in the amount of not less than $76,000. FSA has a fourth position mortgage on the Farm Property by operation of a mortgage filed on March 17, 2015, securing a promissory note executed by the Debtor for FSA loan 44-04, which has an amount due and owing of $53,563.68 as of March 5, 2019, and re-securing FSA loans 44-01, 44-05, and 44-06. FSA's fourth position mortgage also lists the Debtor's residence as secured collateral. The amount of allowed claims secured by the Farm Property is not less than $504,589.24.

5.      The parties agree that the collateral value of the Farm Property is $430,000.

6.      The parties agree that FSA is entitled to relief from stay in respect to the Farm Property, and may proceed with its foreclosure action against the Farm Property previously initiated in the matter *United States v. Elsa Leticia Torres, et al.*, Case No. 1:17-cv-03217-RMP (E.D. Wash.). Debtor stipulates to FSA's motion for relief from stay as to the Farm Property. ECF No. 65.

### B. Modification Of FSA's Outstanding Loan As To The Residence

7.      FSA has a security interest in the Debtor's real property identified in the Plan as "contingent 2nd home" (ECF No. 7 at 4), legally known as:

> Lot 30, LENSEIGNE FARMS PHASE 2, recorded September 16, 2004, under Auditor's File Number 7419970, records of Yakima County, Washington.

> Postal Address: 105 S. Gelena Street, Moxee, Washington, 98936, Tax No.  191201-44532

> (hereinafter referred to as "Residence").

8.      As outlined below, FSA agrees that the secured amount of its debt may be paid pursuant to 11 U.S.C. § 1325(a)(5), beginning during the Plan and

p. 89

may be completed more than 5 years after confirmation.

      9.     The parties agree that the valuation of the Residence is $235,000. The parties further agree that FSA has a secured claim in the Residence in the amount of $54,000, subject to the amount FSA recovers through the foreclosure sale of the Farm Property as agreed to in Paragraph 10.g below.

      10.    FSA's secured claim in the Residence is subject to the following:

          a.    The parties agree that interest of 3% shall apply to this secured amount beginning on the date of confirmation and that this debt shall be amortized over 20 years, beginning on the date of confirmation.

          b.    The parties agree monthly payments shall be made based on the debt being amortized over a twenty-year period. The monthly payments shall be $300.00 until such debt is paid in full.

          c.    Debtor agrees to execute a new mortgage prepared by FSA to secure this debt in the Residence prior to confirmation of the Plan.

          d.    Payments shall be made directly by Debtor to FSA, Yakima County FSA Office, 1606 Perry Street, Suite A, Yakima, WA 98902.

          e.    The parties agree that the first payment shall be due May 1, 2019, and each subsequent monthly payment shall be made on or before the first day of each month until the debt is paid in full.

          f.    The foregoing debt to FSA secured by the Residence is not a program loan and any option, term, or other available

modification available to program loans shall not apply.

g.    Upon completion of the foreclosure and sale of the Farm Property, and taking into accounts monthly payments paid by Debtor toward FSA's secured claime in the Residence, FSA shall provide an accounting to the Debtor and Trustee of the outstanding amount of its secured claim referenced in paragraph 2, if any. Upon completion of FSA's accounting, if the Debtor owes less than the secured amount on the Residence, FSA shall adjust Debtor's monthly payments for the remaining monthly payments at the same interest rate to pay off the revised remaining balance. If FSA's secured claim referenced in paragraph 2 is paid in full from the sale of the Farm Property, any net proceeds received from the sale remaining after payment of costs, fees, taxes, and allowed claims of FSA and Northwest Farm Credit Services, shall be remitted to Debtor and Debtor's monthly payments to FSA as provided herein shall cease.

h.    If FSA does not receive a monthly payment as described above within thirty days of when a payment is due, Debtor shall be in default. Once in default, the parties agree that the automatic stay shall not apply to FSA. FSA may submit an order to the Court granting relief from the automatic stay, and the Court may enter such order without input or the opportunity to object by Debtor, creditors, trustee, or any other party. Debtor agrees that a subsequent foreclosure, if any, by FSA related to the Residence does not constitute a

violation of the single-action rule (RCW 61.12.120).

    i.    FSA agrees to amend its foreclosure complaint in the matter *United States v. Elsa Leticia Torres, et al.*, Case No. 1:17-cv-03217-RMP (E.D. Wash.) to dismiss the Residence from the lawsuit without prejudice.

    j.    Debtor agrees to execute all documents necessary to ensure FSA retains a second position lien on the Residence upon request by FSA.

## C. Remaining Terms

11.    These provisions or terms in this Stipulation in no way modify, hinder, waive, or otherwise change the secured position of FSA and the secured nature of the amounts owed.

12.    The secured debt owed to FSA shall not be discharged in the bankruptcy and FSA's liens/mortgages shall continue in full force and effect until the debt is paid in full.

13.    All other collateral of FSA has been liquidated.  If Debtor discovers any other property subject to FSA's security documents, she will notify FSA immediately and consent to liquidation of such collateral, with any proceeds to be applied as an additional payment to her outstanding debt.

14.    If the Debtor's Chapter 13 bankruptcy case is dismissed, the parties shall continue to be bound by this Stipulation and it shall continue in full force and effect until the debt is paid in full.

//

//

//

//

15.    If a provision herein contradicts or is not consistent with a term or provision in the Plan, the provisions set forth herein apply.

DATED this ___ day of April, 2019.

Joseph H. Harrington
United States Attorney

Brian M. Donovan        4/16/2019
Brian M. Donovan
Assistant United States Attorney
Attorney for Farm Service Agency

K. Denny Colvin        4/22/19
K. Denny Colvin
Attorney for Debtor

Mike Todd        4/24/19
Mike Todd
Attorney for Chapter 13 Trustee

STIPULATION FOR RELIEF FROM STAY AND FOR
MODIFICATION OF THE FARM SERVICE AGENCY LOAN - 7